## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHARLES E. THORNTON, #Y19115, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | **Case No. 20-cv-01100-SMY** |
| | ) | |
| ROB JEFFREYS, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Charles E. Thornton, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. This case is now before the Court on Plaintiff's Motion for a Preliminary Injunction.[1] (Doc. 13). Plaintiff seeks an order that he not be double-celled while housed in Menard's North 2 housing unit or that he be relocated to a larger cell. Defendants oppose the motion. (Doc. 24).

## BACKGROUND

Plaintiff makes the following allegations in his First Amended Complaint (Doc. 15): Plaintiff suffers from nerve pain as a result of bullet fragments lodged in his neck. He has been incarcerated at Menard since 2017 and has four pending lawsuits against prison staff that were filed in 2017, 2019 and 2020. He also has three pending grievances against prison staff submitted in 2019 and 2020.

Plaintiff was relocated to a cell in the North 2 cell house by John Doe 1 on May 12, 2020. The cell was shockingly small. Plaintiff complained to John Doe 1 about the size of the cell and

---

[1] The motion also included a request for a temporary restraining order, which was denied. (Doc. 16).

about being double-celled. John Doe 1 became irate and told Plaintiff to go in the cell or go back to segregation. John Doe 1 threatened to give Plaintiff a disciplinary ticket if he did go in the cell.

There is inadequate space in the cell for two inmates. There is only 18 to 32 square feet of space for each individual. The cell is technically large enough to perform some exercises such as jumping jacks or knee bends but with a cellmate in close proximity it makes it impossible to perform any vigorous exercise. There is barely enough room to stretch. He stays in a sedentary position in his bed the majority of the time. The inability to exercise causes him pain due to his pre-existing medical condition.

The stresses of living in a cramped space and the decline in Plaintiff's physical condition have caused a deterioration in his mental health. Plaintiff informed his assigned mental health professional, Jane Doe 1, and assigned psychiatrist, Jane Doe 2, that being double-celled in an inadequate living space was having a negative psychological effect on him. They told him they did not see anything wrong with the cell size and could not have him moved. He was, however, allowed an increase in his psychotropic medications. Plaintiff continued to complain about the cell size during his monthly sessions with Jane Does 1 and 2, but his complaints were ignored and his requests to be moved were refused.

Plaintiff also complained to Warden Anthony Wills that the cell space was cramped and there was not even sufficient room to do his legal work. The Warden told him there was nothing wrong with the cell size and there was plenty of space to do his legal work. Plaintiff filed a grievance in which he complained about being double-celled in an in adequate living space and stated it was harming his physical, mental, and emotional well-being. He did not receive a response to his grievance. Plaintiff mailed a copy of the grievance to IDOC Director Rob Jeffreys and did not receive a response. He subsequently filed an emergency grievance on the issue and

the Warden denied expedited review.

Following preliminary review of the First Amended Complaint under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on the following claims:

Count 1:    Eighth Amendment claim against Jeffreys, Wills, John Doe 1, Jane Doe 1, and Jane Doe 2 for unconstitutional conditions of confinement.

Count 2:    Eighth Amendment claim against Jeffreys, Wills, Jane Doe 1, and Jane Doe 2 for deliberate indifference to Plaintiff's serious medical needs by refusing to move Plaintiff from a cell that was causing a decline in Plaintiff's physical and mental health and failing to provide adequate mental health treatment.

Count 3:    First Amendment claim Jeffreys, Wills, John Doe 1, Jane Doe 1, and Jane Doe 2 for retaliating against Plaintiff for filing grievances and lawsuits complaining about his conditions of confinement.

(Doc. 16).

## DISCUSSION

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citation omitted). A party seeking a preliminary injunction must make a threshold showing that: "(1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020). If the movant makes this threshold showing, the court proceeds to consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the "public interest." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Mandatory preliminary injunctions—those "requiring an affirmative act by the defendant"—are "ordinarily cautiously viewed and sparingly issued." *Id.* In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the

3

harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). – check this cite

The practice of housing two inmates in a prison cell designed for one, known as "double celling," is not *per se* unconstitutional. *French v. Owens*, 777 F. 2d 1250, 1252 (7th Cir. 1985) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). Rather, conditions of confinement claims require a showing that the conditions denied the plaintiff "the minimal civilized measure of life's necessities." *Id.*. A determination of whether there has been "serious deprivations of basic human needs" involves an examination of the "totality of conditions of confinement." *Id.*

Plaintiff argues that if he continues to be double-celled in North 2 he will suffer irreparable harm in the form of "deterioration [of his] brain illness (mental health)" and his "musculoskeletal will worsen." He also asserts it places him at risk of imminent harm due to the likelihood that he will suffer "cardiovascular morbidity (heart attacks)" and he will continue to suffer pain from his pre-existing injury. He relies on the allegations in the Complaint to support his motion.

Defendants argue Plaintiff has failed to show the existence of irreparable harm if a preliminary injunction is not issued. Defendants point out that Plaintiff does not explain how being double-celled with another inmate will cause any deterioration to his brain or musculoskeletal system or how it might or could cause heart attacks. Defendants also argue that Plaintiff has failed to provide evidence sufficient to show that he is likely to succeed on the merits of his claim, that he has an adequate remedy at law via his lawsuit, and that granting Plaintiff's request would directly interfere with the operations of IDOC in a situation where Plaintiff is merely attempting to manipulate the system.

Plaintiff has not made a threshold showing that he will suffer irreparable harm without injunctive relief at this time. Tellingly, he has omitted any information about the time he spends

4

out of his cell and to what extent he is able to exercise in the day room and yard. Additionally, he is not qualified to offer the conclusions and opinions about the medical or mental health conditions he believes he may suffer. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief." *Orr v. Shicker,* 953 F.3d 490, 502 (7th Cir. 2020) (internal citation omitted).

There is also a potential exhaustion issue based on the allegations in the First Amended Complaint. That issue must be resolved before preliminary injunctive relief would be appropriate because a prisoner plaintiff has no likelihood of success on his claim if he failed to exhaust administrative remedies prior to filing suit. *See Gakuba v. Jeffreys*, No. 3:19-cv-01081-SMY, 2020 WL 1248295, at *2 (S.D. Ill. March 16, 2020); *Thompson v. Illinois Dep't of Corr.*, No. 3:15-CV-850-NJR-DGW, 2016 WL 5341198, at *3 (S.D. Ill. Sept. 23, 2016); *Hampton v. Baldwin*, No. 3:18-cv-550-NJR-RJD, 2018 WL 5830730, at *7 (S.D. Ill. November 7, 2018). A plaintiff may not file an action and seek relief, injunctive or otherwise, unless he has exhausted his administrative remedies.

## CONCLUSION

For the reasons stated, Plaintiff's Motion for Preliminary Injunction (Doc. 13) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  March 15, 2021**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

5